IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01108-RBJ-KLM

ROBERT DALE SHEPARD,

      Plaintiff,

v.

PATRICIA RANGEL, ADX General Population Unit Manager, individually and in her official capacity;
DARREN FOSTER, ADX Counselor, individually and in his official capacity;
DANIEL SHEPHERD, ADX Correctional Officer, individually and in his official capacity and
FEDERAL BUREAU OF PRISONS,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendant Daniel Shepherd's ("Shepherd") **Motion to Dismiss Plaintiff's First Amended Complaint** [Docket No. 52; Filed November 29, 2012] ("Shepherd's Motion"); on Defendant Patricia Rangel ("Rangel"), Defendant Darren Foster ("Foster"), Defendant Shepherd, and Defendant Federal Bureau of Prisons's ("BOP") **Motion To Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P 12(b)(6)** [Docket No. 55; Filed November 29, 2012] (the "BOP's Motion"); and on Defendant Foster's **Motion to Dismiss Plaintiff's Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(6)** [Docket No. 56; Filed November 29, 2012] ("Foster's Motion").[1]

_____

[1] Shepherd's Motion [#52] is made by Defendant Shepherd in his individual capacity only. The BOP's Motion [#55] is made by the BOP on behalf of itself, Defendant Rangel in her individual and official capacities, and Defendants Shepherd and Foster in their official capacities only. Foster's Motion [#56] is made by Defendant Foster in his individual capacity only.

On January 7, 2013, Plaintiff filed a Consolidated Response [#65] to all Defendants' Rule 12(b)(6) *Bivens* arguments, and on January 10, 2013, Plaintiff filed Responses [#66, #67] to Foster's Motion and the BOP's Motion.  On January 16, 2013, Plaintiff filed a Response [#69]  to Shepherd's Motion.

Defendant Shepherd filed a Reply [#71] to the Consolidated Response on January 17, 2013, and a Reply [#80] to Plaintiff's Response to Shepherd's Motion on January 28, 2013.  Defendant Rangel filed a Reply [#76] in support of the BOP's Motion on January 24, 2013.  The BOP filed a Reply [#87] in support of the same motion on February 14, 2013.  Defendant Foster filed a Reply [#79] in support of Foster's Motion on January 25, 2013.

 Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motions to Dismiss have been referred to this Court for a recommendation regarding disposition [#53, #57].  The Court has reviewed the Motions [#52, #55, #56], Plaintiff's Responses [#65, #66, #67, #69], Defendants' Replies [#71, #76, #79, #80, #87], the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that Shepherd's Motion [#52] and Foster's Motion [#56] be **GRANTED**, that the BOP's Motion [#55] be **GRANTED in part and DENIED as moot in part**, and that Plaintiff's Amended Complaint be **DISMISSED** in part with prejudice and in part without prejudice.

## I. Summary of the Case

Plaintiff is a prisoner in the custody of the BOP.  He is currently incarcerated at the United States Penitentiary, Administrative Maximum ("ADX") in Florence, Colorado, but asserts West Virginia citizenship.  *Am. Compl.* [#46] at 6.  On April 26, 2012, Plaintiff filed

a prisoner complaint pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971),[2] against the BOP and various ADX employees, including Defendants Rangel, Foster, and Shepherd, each individually and in his or her official capacity.  *Compl.* [#1] at 1.  Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff filed an Amended Complaint on November 8, 2012.  *Am. Compl.* [#46].

Plaintiff's first cause of action, against Defendants Rangel, Foster, and Shepherd, in their individual and official capacities, alleges retaliation in violation of the First Amendment.  Plaintiff asserts this cause of action as a *Bivens* claim, seeking nominal, compensatory, and punitive damages, as well as declaratory and injunctive relief.  *Am. Compl.* [#46] at 4, 8.  Plaintiff argues that these Defendants engaged in a continuing pattern of retaliatory actions that would chill a person of ordinary firmness from exercising certain First Amendment rights.  *Id.* at 9.

The second cause of action, against only Defendant Rangel, in her individual and official capacities, alleges a violation of the Fifth Amendment guarantee of procedural due

---

[2] Plaintiff also asserts that this Court has jurisdiction over this action pursuant to 42 U.S.C. § 1983 and diversity jurisdiction.  Plaintiff's jurisdictional claim under 42 U.S.C. § 1983 fails as a matter of law because this section applies to actions taken by state and local entities, not by the federal government.  *See Wheeldin v. Wheeler*, 373 U.S. 647, 650 & n.2 (1963); *see also Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) ("[Section] 1983 . . . does not apply to federal officers acting under color of federal law.")  "For purposes of federal diversity jurisdiction, an individual's state citizenship is equivalent to domicile."  *Smith v. Cummings*, 445 F.3d 1254, 1259-60 (10th Cir. 2006).  However, "[b]ecause domicile is a voluntary status, a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state."  *Id.* at 1260.  The Court notes that diversity of citizenship exists here because Plaintiff asserts citizenship of the State of West Virginia.  *Am. Compl.* [#46] at 6-7.  The Court also notes that Plaintiff seeks the minimum requisite damages.  *Id.* However, Plaintiff is a federal prisoner, and his claims are properly raised under *Bivens*.  *See, e.g.*, *Warren v. Daniels*, No. 10-01082, 2010 WL 3175114, at *1 n.1 (D. Colo. Aug. 10, 2010) (stating that federal prisoner claims should be brought pursuant to *Bivens*).  Therefore, the existence of diversity in this case does not alter the Court's analysis of the merits of this issue, as jurisdiction in a *Bivens* action is based on 28 U.S.C. § 1331, federal-question jurisdiction.  *Bivens*, 403 U.S. at 395.

process.  *Id.* ¶¶ 82-84.  Plaintiff avers that as a result of Defendant Rangel's allegedly retaliatory order, Plaintiff was moved into the Special Housing Unit ("SHU") on July 19, 2010, where he remained until September 29, 2010.  *Id.* ¶ 84.  He alleges that the SHU was much louder than his original cell, and that the move resulted in severe sleep deprivation that constituted atypical and significant hardship.  *Id.*  Plaintiff asserts his claim pursuant to *Bivens*, requesting nominal, compensatory, and punitive damages, as well as declaratory relief.  *Id.* at 81-82, 85-87.

In his third cause of action, Plaintiff alleges that the BOP acted in violation of the principle established in *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), *i.e.*, that an agency must obey its own regulations.  Plaintiff asserts in this third claim for relief that the alleged ADX practice of requiring Plaintiff to "shout" his complaints before personnel would provide him with a BP-8 Informal Resolution Form violates *Accardi*.  *Am. Compl.* [#46] ¶ 86.  Plaintiff requests declaratory and injunctive relief regarding this cause of action.  *Id.* at 82-83, 84-85.

The fourth cause of action asserts that the final agency action of the BOP denying case #600137 was arbitrary, capricious, an abuse of discretion, and not in compliance with the law under 5 U.S.C. § 706.  *Am. Compl.* [#46] ¶ 88; *Compl.* [#1] ¶¶ 26-30.  Plaintiff argues that judicial review of this action is not barred by 18 U.S.C. § 3625 because the agency decision Plaintiff challenges was not made pursuant to 18 U.S.C. §§ 3621-3626.  *Am. Compl.* [#46] ¶ 88.  The relief requested by Plaintiff in connection with this cause of action is not clear on the face of the Amended Complaint, though his original complaint seeks a declaration that the BOP's final agency action was arbitrary, capricious, an abuse of discretion, and not in compliance with the law.  *Compl.* [#1] at 23.

Turning to the specifics of Plaintiff's allegations, with respect to Defendant Rangel Plaintiff alleges that in the last week of June 2010, he complained to Defendants Rangel and Foster that various correctional officers were ransacking his cell in retaliation for having to escort him to use the law library. *Am. Compl.* [#46] ¶ 10.  Plaintiff alleges that on July 19, 2010, he was told that Defendant Rangel had ordered him to be transferred to the Protective Custody ("PC") range because he had filed a grievance for another inmate. *Id.* ¶ 32.  Plaintiff asserts that he would have been subject to "ostracization" by fellow inmates if he had gone to the PC range, that Defendant Rangel knew the move would subject him to being ostracized, and that Defendant Rangel intended these negative effects as retaliation for grievances Plaintiff had filed. *Id.* ¶¶ 35, 38.  Because Plaintiff refused to go to the PC range, he was instead transferred to the Special Housing Unit ("SHU") and charged with refusing to obey the previous order to move. *Id.* ¶ 36.  Plaintiff alleges that subsequently, on July 23, 2010, Defendant Rangel and a non-defendant came to Plaintiff's cell on behalf of the Unit Disciplinary Committee ("UDC") and conducted a hearing concerning his refusal to move to the PC range. *Id.* ¶ 40.  When Plaintiff objected to Defendant Rangel's participation in the UDC process because of her role in the events underlying the charge against him, Defendant Rangel refused to recuse herself. *Id.* ¶ 42.  Defendant Rangel and the UDC, determining that they lacked the authority to issue Disciplinary Segregation ("DS"), referred the case to the Disciplinary Hearing Officer ("DHO"), who found Plaintiff guilty and sentenced him to fifteen days of DS and thirty days of lost privileges. *Id.* ¶¶ 43, 46.  Plaintiff successfully appealed, arguing that Defendant Rangel's participation in the UDC process violated a regulation, and the BOP expunged the DHO's finding. *Id.* ¶¶ 44, 45.  Plaintiff alleges that he served the entirety of the sanctions

and that if Defendant Rangel had recused herself, the UDC would not have referred the case to the DHO, and the DHO would not have imposed the fifteen days of disciplinary sanction. *Id.* ¶¶ 45, 47. On November 29, 2012, Defendant Rangel filed a motion to dismiss the claims against her pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted. *BOP's Motion* [#55] at 1.

With respect to Defendant Foster, Plaintiff alleges that on June 30, 2010, when Plaintiff asked Defendant Foster for a BP-8 grievance form to file a complaint regarding cell searches, Defendant Foster replied, loudly enough that every inmate in the immediate area could clearly hear him, that correctional officers were required to do cell searches. *Am. Compl.* [#46] ¶¶ 17, 18. Plaintiff alleges that the search that Defendant Foster and another correctional officer conducted of his and his surrounding neighbors' cells thirty minutes later was the result of an explicit agreement between Defendant Foster and the correctional officer that the impact of Plaintiff's complaint concerning his own cell searches would be diminished if other inmates also had their cells searched. *Id.* ¶ 20. Plaintiff also asserts that Defendant Foster and the other correctional officer intended the search to cause ill will and resentment between the inmates and Plaintiff in order to deter Plaintiff from lodging future complaints. *Id.* Finally, Plaintiff alleges that Defendants Rangel and Foster conspired together and agreed that Plaintiff should be moved from B-Lower in G Unit to the PC range as punishment for filing grievances and using the law library. *Id.* ¶ 39. Defendant Foster filed a motion to dismiss this claim pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that there is no *Bivens* remedy available here and that he is entitled to qualified immunity. *Foster's Motion* [#52] at 3.

With respect to Defendant Shepherd, Plaintiff asserts that on January 1, 2011, when Plaintiff asked Defendant Shepherd if Plaintiff could use the Electronic Law Library ("ELL") after his exercise period, Defendant Shepherd refused, threatened Plaintiff ("You file another grievance against me over not taking you to that . . . law library and it's going to be on with you and me!"), and then stated to four other inmates, "You can all thank [Plaintiff] for your tore up cells when you go back in." *Am. Compl.* [#46] ¶¶ 50, 51.   Plaintiff asserts that Defendant Shepherd then searched these cells to retaliate against Plaintiff for a grievance filed on December 28, 2010, in which Plaintiff complained that Defendant Shepherd had denied him access to the law library. *Id.* ¶¶ 52-53. Plaintiff also alleges that on February 1, 2011, Defendant Shepherd escorted Plaintiff to the ELL against his wishes, ignored his request to use the toilet while he was in the law library, and searched his cell, destroying personal property in the process. *Id.* ¶¶ 55-58. Plaintiff further claims that on March 21, March 27, March 28, and April 5, 2012, Defendant Shepherd "ransacked" his cell and confiscated a garbage bag full of his belongings, including legal research and materials, while Plaintiff was using the law library. *Id.* ¶¶ 69-71. Finally, Plaintiff alleges that Defendant Shepherd ordered him to submit to strip searches on March 29 and April 4, 2012. *Id.* ¶¶ 73-74.  On November 29, 2012, Defendant Shepherd filed a motion to dismiss these claims against him pursuant to Fed. R. Civ. Proc. 12(b)(6), asserting both that there is no *Bivens* remedy available here and that he is entitled to qualified immunity. *Shepherd's Motion* [#52] at 1-2.

Plaintiff alleges in his third claim for relief that ADX practices require Plaintiff to "shout" his complaints before receiving a BP-8 Informal Resolution Form, violating the *Accardi* doctrine.   347 U.S. at 267; *Am. Compl.* [#46] ¶¶ 85-7.   The BOP argues that

Plaintiff has failed to state a claim for two independent reasons.  First, Plaintiff has no due process interest at stake because the allegations in his Amended Complaint involve neither "atypical and significant hardships" nor actual deprivation of due process.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Second, Plaintiff does not allege that the BOP actually failed to follow its regulation.  *BOP's Motion* [#55] at 21-22.  Plaintiff argues in response that, although the regulations at issue do not explicitly describe the process which must occur before a formal complaint is filed, ADX's informal procedures may not operate to limit access to the filing of a formal grievance.  *Response* [#81] at 4-5.

## II.  Standard of Review

### A.    Rule 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the court at any point in the proceeding.  *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court,

or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.    Rule 12(b)(6)**

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [hid] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that

offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  Despite this relaxed pleading standard, a *pro se* plaintiff retains "the burden of alleging sufficient facts on which a

-10-

recognizable legal claim could be based." *Hall*, 935 F.2d at 1110.  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances.  *Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980); *accord Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994).  Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citing *Townsend v. Sain*, 372 U.S. 293, 318 (1963)).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d at 269 (citations omitted).

### III.  Analysis

**A.**     **Subject Matter Jurisdiction Under Rule 12(b)(1)**

Defendants do not raise a subject matter jurisdiction argument pursuant to Rule 12(b)(1) in the Motions.  However, the Court must consider the question *sua sponte* when it comes to the Court's attention that the Court may lack jurisdiction over a matter. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009).   Accordingly, the Court first considers whether it has subject matter jurisdiction over Plaintiff's claims.   *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-00050, 2012 WL 959405, at *3 (D. Colo. March 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

### 1.     Eleventh Amendment Immunity

Although *Bivens* creates "an implied private action for damages" against federal officers, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001); *see also Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1247 (10th Cir. 1989) (holding that the doctrine of sovereign immunity bars *Bivens* claims against federal officials in their official capacities).  "Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Perrill*, 275 F.3d at 963 (citation omitted).  Plaintiff's official capacity claims are actually claims against the United States. *See, e.g.*, *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir.

1989) ("[W]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States."). Such a suit for damages against the United States is barred by sovereign immunity unless immunity has been waived. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Atkinson*, 867 F.2d at 590 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)).

The doctrine of sovereign immunity bars *Bivens* and diversity actions brought directly against the United States. *See Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997) (holding that when "the United States retains its sovereign immunity . . . the district court lacks subject matter jurisdiction to hear the suit"); *Perrill*, 275 F.3d at 962 (noting that an "'official capacity *Bivens* suit' would be an oxymoron"). Accordingly, Plaintiff's *Bivens* claims for any form of monetary damages against Defendants in their official capacities are barred by sovereign immunity, and the Court therefore lacks subject matter jurisdiction to hear these official capacity claims.[3] *See id.*; *Am. Compl.* [#46] at 8, 85, 86. Plaintiff has not made a showing that the United States has waived its sovereign immunity by consenting to being sued. Therefore, the Court respectfully **recommends** that Plaintiff's

---

[3] Unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiff's claims against Defendants for injunctive relief from alleged constitutional violations. *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations). However, in order to establish his entitlement to this form of relief, Plaintiff's Amended Complaint must include sufficient factual allegations to state a claim for a constitutional violation. *Abu-Fakher v. Bode*, 175 F. App'x 179, 181 (10th Cir. 2006).

official capacity First and Fifth Amendment claims for monetary relief against Defendants Rangel, Shepherd, and Foster be **dismissed with prejudice.** *Compare Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim"), *with Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities.") *and Johnson v. Lappin* 10-02235, 2011 WL 1656790, at *4 (D. Colo. May 02, 2011) ("To the extent that [Plaintiff] asserts a *Bivens* claim for money damages against Defendants in their official capacities, such claims are barred by sovereign immunity and are thus properly dismissed with prejudice for lack of subject matter jurisdiction.").

## 2.    Declaratory Judgment Act

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998).  The DJA explicitly incorporates the case or controversy requirement of the Constitution by stating: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The Court therefore considers the issue of jurisdiction pursuant to Rule 12(b)(1) with respect to Plaintiff's requests for declaratory judgment.  *See, e.g.*, *Van Deelen v. Fairchild*, No. 05-2017, 2005 WL 3263885, at *7 (D . Kan. Dec. 1, 2005).

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)). "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id.* (citations omitted). In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.*

To establish that a case or controversy exists, Plaintiff must demonstrate that the controversy is: (1) definite, concrete, and touches on the legal relations of the parties, and (2) sufficiently immediate and real. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In short, "[t]he ultimate question is whether declaratory relief will have some effect in the real world." *Van Deelen*, 2005 WL 3263885, at *7 (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). The mere fact that Plaintiff's requested relief would give Plaintiff the satisfaction that he was wronged in the past does not create an actual, live controversy. *Id.* (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir. 1997) (holding that the case or controversy requirement was not met because the plaintiff's requested declaratory relief was moot)). Further, "[e]ven if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the

propriety of declaratory judgment[.]" *Id.* (citing *Exec. Risk Indem. Inc. v. Sprint Corp.*, 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003)).

> Plaintiff seeks the following declaratory relief:

> The issuance of a Declaratory Judgment Stating that: (a) The above-described acts, practices and omissions by Defendants Rangel, Foster . . . and Shepherd *were* violative [sic] of, and *done* in retaliation for, the exercise of Plaintiff's First Amendment rights . . . (b) The act of Defendant Rangel in refusing to recuse herself from the Plaintiff's UDC hearing  . . . *was* in violation of the First and Fifth Amendments; (c) That the Plaintiff's Substantive Due Process rights under the Fifth Amendment *were* violated by the actions of Defendant Shepherd in particular, and Defendants Rangel [and] Foster . . . as well;

*Am. Compl.* [#46] at 80-82 (emphasis added).  In these claims, Plaintiff seeks a declaratory judgment that his constitutional rights *were* violated.  However, even if the Court were to grant his request, the declaratory judgment would not "affect[] the behavior of [D]efendant[s] toward [P]laintiff," because Defendants would not be required to take any course of action.  *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).  In other words, Plaintiff is seeking a retrospective opinion that these Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment.  *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").

Plaintiff's requests and the supporting allegations in the Amended Complaint simply do not state "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Md. Cas. Co.*, 312 U.S. at 273.  Plaintiff seeks a

-16-

declaration from the Court that Defendants Rangel, Shepherd, and Foster violated his

rights in the past:

> Even if [P]laintiff demonstrated past constitutional violations, the relief would do nothing more than give [P]laintiff the satisfaction of a declaration that in the past, [D]efendants wronged him. Retrospective declaratory relief would not impact the present or future legal relations of the parties. In this instance, declaratory relief would be hollow and fruitless.

*Van Deelen*, 2005 WL 3263885, at *8.  Thus, because there is no case or controversy with

regard to Plaintiff's requested declaratory relief, the Court finds that Plaintiff's requests for

declaratory relief against these Defendants should be dismissed for lack of subject matter

jurisdiction.[4]

Plaintiff's claim for declaratory relief against the BOP is a different matter.   Plaintiff

requests declaratory judgment against the BOP stating:

> (d) The Administrative Remedy Program of the BOP, as regulated and defined in the Code of Federal Regulations, *requires* only a four-step process . . . which *includes* the written submission of grievances on a BP-8, BP-9, BP-10 and BP-11 form; that BP-8 . . . Forms *should be* supplied liberally upon request; and that the *current* policy that *requires* Plaintiff to scream out the entire substance of his complaint . . . *is* in violation of Plaintiff's privacy and the BOP's own rules.

*Am. Compl.* [#46] at 82-83.  This claim for relief is framed in the present tense. However,

as stated, this claim for relief goes above and beyond a mere declaration of the meaning

of the regulation and essentially seeks a specific change in policy implementation by the

---

[4]  The Court notes that this is particularly true of Defendant Shepherd.  Plaintiff alleges that in April of 2012, Defendant Shepherd was transferred to a post outside Plaintiff's unit.  *See Am. Compl.* [#46] ¶ 79.  In addition, Plaintiff has provided no allegations or evidence that his current conditions are substantially the same as those he allegedly endured while Defendant Shepherd was occupying a post as the D Unit Officer-in-Charge. *Id.* Accepting these allegations as true, Plaintiff's request for entry of declaratory judgment would have no effect on Defendant Shepherd's future behavior toward Plaintiff.  *See Mobley*, 40 F.3d at 340.

BOP.  The Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  The Court construes this claim as a claim for injunctive relief requesting that "BP-8 . . . Forms *should be* supplied liberally upon request[.]"  Thus, the DJA does not apply.  *Am. Compl.* [#46] at 82-83.  Instead, because Plaintiff also explicitly requests that the Court issue injunctive relief requiring the BOP to alter its practices, the Court will incorporate its analysis of Plaintiff's implicit request for a declaration into its analysis below of Plaintiff's request for injunction.

Accordingly, the Court respectfully **recommends** that Plaintiff's requests for declaratory relief against all defendants be **dismissed without prejudice** for lack of subject matter jurisdiction.  *Brereton*, 434 F.3d at 1216-17.

### 3.  Jurisdiction under the Administrative Procedures Act ("APA")

Plaintiff's fourth claim incorporates Claim Three from Plaintiff's Original Complaint, asserting that the final agency action of the BOP denying case #600137 is arbitrary, capricious, an abuse of discretion, and not in compliance with the law under 5 U.S.C. § 706.  *Compl.* [#1] ¶¶ 26-30.  However, the Court has already dismissed this claim because 18 U.S.C. § 3625 specifically excludes APA jurisdiction over any "making of any determination, decision, or order under this subchapter."  *Order to Dismiss In Part and to Draw Case to a District Judge and a Magistrate Judge* [#6] at 3.  The denial of Plaintiff's

administrative remedy is part of postsentence administration and, therefore, may not be reviewed under the APA.  *See* 5 U.S.C. § 701(a)(1) (APA does not apply if statute precludes review).

Furthermore, even if 18 U.S.C. § 3625 did not exclude Plaintiff's fourth claim from APA jurisdiction, the APA itself would exclude it because an agency action may not be reviewed under the APA if "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).   Here, the administration of inmates, including the administrative remedy program, is committed to agency discretion by law in 18 U.S.C. § 4001(b)(2), which states, "The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation."  Therefore, there is no APA jurisdiction over Claim Four.  Because this claim has already been dismissed as meritless and is no longer a part of this case, the BOP's Motion [#55] is **denied in part as moot** on this point.

### 4.    Availability of Injunctive Relief Against Defendant Shepherd

Because Plaintiff requests injunctive relief regarding the conduct of Defendant Shepherd, Plaintiff's vulnerability to suffering further injury from Defendant Shepherd is a key consideration.  *Jordan*, 654 F.3d at 1024 ("Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance[.]").  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  With regards to Defendant Shepherd in particular, Plaintiff has failed to allege facts illustrating that Plaintiff is being injured in an ongoing and continuous

manner.  Instead, Plaintiff asserts that Defendant Shepherd has been reassigned and is no longer working in a position which affords him contact with Plaintiff.  *Am. Compl.* [#46] ¶ 79.  In addition, Plaintiff neither claims nor provides evidence that his current conditions are substantially the same as those he allegedly experienced while Defendant Shepherd was in the position of the D Unit Officer-in-Charge.  *Id.*  Thus, Plaintiff has not alleged the "real and immediate" injury necessary for entry of injunctive relief.  *See Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (stating that claim for injunctive relief was moot where allegations of "real and immediate" injury were attenuated).   The Court therefore respectfully **recommends** that Plaintiff's claim for injunctive relief against Defendant Shepherd be **dismissed without prejudice as moot**.  *See id.*; *accord Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (holding injunctive relief should be denied when there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) ("We have no subject-matter jurisdiction if a case is moot."); *Brereton*, 434 F.3d at 1216-17.

**B.    Failure to State a Claim under Rule 12(b)(6)**

> **1.    Availability of Monetary Relief Under *Bivens***

In response to Plaintiff's claims for damages, Defendants argue that the Court should not create a *Bivens* remedy granting monetary relief for Plaintiff's claims.

*Shepherd's Motion* [#52] at 5; *BOP's Motion* [#55] at 1; *Foster's Motion* [#56] at 2.   In

*Bivens*, the Supreme Court "recognized for the first time an implied private action for

damages against federal officers alleged to have violated a citizen's constitutional rights."

*Malesko*, 534 U.S. at 66.   The Supreme Court has noted that because implied causes of

action are generally disfavored, the Supreme Court has been reluctant to extend *Bivens*

liability "to any new context or new category of defendants."   *Id.* at 68; *see also Wilkie v.*

*Robbins*, 551 U.S. 537, 549-550 (2007) (summarizing the basic considerations underlying

past Supreme Court decisions declining to create *Bivens* claims and applying a two-part

analysis to the creation of *Bivens* liability).

        The Court recently declined to extend *Bivens* liability to claims against prison officials

in their individual capacities for an alleged violation of a prisoner's First Amendment rights.

*Saleh v. United States*, No. 09-02563, 2011 WL 2682803, at *10-12 (D. Colo. March 8,

2011), *overruled in part on other grounds*, No. 09-02563, 2011 WL 2682728 (D. Colo. July

8, 2011).   In *Saleh*, the Court found no *Bivens* remedy for a prisoner's First Amendment

Claim because (1) the Supreme Court has never explicitly extended *Bivens* to the First

Amendment, and (2) other adequate avenues of relief for litigating the injury were available

to the plaintiff.   *Id.* at *11*; s*ee also Schweiker v. Chilicky*, 487 U.S. 412, 421-23 (1988);

*Bush v. Lucas*, 462 U.S. 367, 386-88 (1983) (holding that, even assuming a First

Amendment violation had occurred and acknowledging that the administrative "remedies

do not provide complete relief for the plaintiff[,]" a *Bivens* action was inappropriate because

the congressionally installed administrative system "provide[d] meaningful remedies for

employees who may have been unfairly disciplined").

        The Supreme Court has never recognized that federal prisoners have a right of

action for damages against federal officials pursuant to *Bivens* for First Amendment violations. *Saleh*, 2011 WL 2682803, at *11. In fact, the Supreme Court has explicitly refused to acknowledge that federal prisoners may bring a claim for monetary damages based upon an alleged First Amendment violation. *See, e.g.*, *Iqbal*, 556 U.S. at 675 (noting that the Court had "declined to extend *Bivens* to a claim sounding in the First Amendment"); *see also Bush*, 462 U.S. at 390 (citing *United States v. Standard Oil Co.*, 332 U.S. 301, 302 (1947)) (declining "to create a new substantive legal liability without legislative aid" by declining to recognize a right to seek damages for alleged First Amendment violation pursuant to *Bivens*). The Court suggested in *Saleh* that such claims may not have been recognized by the Supreme Court because prisoners may pursue Federal Tort Claims Act claims or claims for injunctive relief, regardless of the availability of a *Bivens* damages claim. 2011 WL 2682803, at *11; *see Wilkie*, 551 U.S. at 550 (noting that adequate, alternative bases for pursuing a particular claim amount "to convincing reason for the Judicial Branch to refrain from providing new and freestanding remedy in damages"); *Bush*, 462 U.S. at 386 (holding that a *Bivens* action was inappropriate because the congressionally installed administrative system "provide[d] meaningful remedies for employees who may have been unfairly disciplined")*; cf.* 42 U.S.C. § 1997e(e) (noting that prisoners are not entitled to claim for money damages where no physical injury is shown).

Since this Court's decision in *Saleh*, the Supreme Court has reaffirmed that it has never held that *Bivens* extends to First Amendment claims. *Reichle v. Howards*, 132 S.Ct. 2088, 2093 n.4 (2012). The Supreme Court recently noted in *Minneci v. Pollard*, 132 S.Ct. 617, 623 (2012), that *Wilkie* fairly summarizes the basic considerations that underlie past Supreme Court decisions declining to create *Bivens* claims. *See Wilkie*, 551 U.S. at 550.

In *Wilkie*, the Supreme Court laid out two questions relating to whether to recognize a

*Bivens* remedy:

> In the first place, there is the question whether any alternative, existing
> process for protecting the interest amounts to a convincing reason for the
> Judicial Branch to refrain from providing a new and freestanding remedy in
> damages. [citation omitted] . . . [E]ven in the absence of an alternative, a
> *Bivens* remedy is a subject of judgment, [and] "the federal courts must make
> the kind of remedial determination that is appropriate for a common-law
> tribunal, paying particular heed, however, to any special factors counselling
> hesitation before authorizing a new kind of federal litigation."

*Id.* (quoting *Bush*, 462 U.S. at 378).[5]  Obeying this guidance, the Court explicitly analyzes

these considerations in making its decision regarding Plaintiff's *Bivens* claims.

### a.  Alternatives Remedies Available

In *Davis v. Passman*, 442 U.S. 228, 242 (1979), the Supreme Court held that

persons who have "no [other] effective means" of redress "must be able to invoke the

existing jurisdiction of the courts for the protection of their justiciable constitutional rights."

However, Plaintiff has at least three alternative, existing processes to protect his First and

---

[5] Though this two-part analysis is not always delineated explicitly in the Supreme Court's decisions, case law shows that these factors have been frequently cited in decisions to deny *Bivens* liability. *See Bush*, 462 U.S. at 386-388 (denying *Bivens* liability for a federal employee's claim that his federal employer dismissed him in violation of the First Amendment because congressionally created federal civil service procedures provide meaningful redress); *Chappell v. Wallace*, 462 U.S. 296, 298-300 (1983) (finding no implied *Bivens* action for a claim by military personnel that military superiors violated various constitutional provisions because there were special factors related to the military that weighed against implying a *Bivens* action), *see also United States v. Stanley*, 483 U.S. 669, 683-684 (1987) (similar); *Schweiker*, 487 U.S. at 414, 425 (1988) (finding no implied Fifth Amendment *Bivens* action for a claim by recipients of Social Security disability benefits because when these benefits were denied, an elaborate administrative scheme provided a meaningful alternative remedy); *FDIC v. Meyer*, 510 U.S. 471, 484-486 (1994) (finding former bank employee's suit against a federal banking agency claiming that he lost his job due to agency action that violated the Fifth Amendment's Due Process Clause failed because there were no implied *Bivens* actions against government agencies rather than particular individuals who act unconstitutionally); *Malesko*, 534 U.S. at 70-73 (finding that the ability of a prisoner to bring state tort law damages action against private individual defendants means that the prisoner does not "lack effective remedies" for his Eighth Amendment-based suit against a private corporation).

Fifth Amendment constitutional interests.  First, he may seek injunctive relief, and seeks it in this case.  *See Malesko*, 534 U.S. at 74; *Am. Compl.* [#46] at 83.  The Court is unconvinced by Plaintiff's allegation that "[o]nly the threat of a damage award will ever deter individuals of this nature [*i.e.*, Defendants], because money is the one thing they do understand[.]" *Consolidated Response* [#65] at 6-7.  Unlike the *Bivens* remedy, which courts "have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74.  While injunctive relief remains available, the Court is unconvinced that money damages are necessary to deter unconstitutional conduct.

Second, Plaintiff may seek a remedy under the mandamus statute.  *See* 28 U.S.C. § 1361.  For mandamus to issue, there must be a clear right to the relief sought, a plainly defined and peremptory duty on the part of respondent to do the act in question, and no other adequate remedy available.  *Hadley Mem'l Hosp., Inc. v. Schweiker*, 689 F.2d 905, 912 (10th Cir. 1982).  Plaintiff must also show that his right to the writ is "clear and indisputable." *See Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 309 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek . . . and carry the burden of showing that [their] right to issuance of the writ is clear and indisputable[.]") (citation omitted); *United States v. Carrigan*, 778 F.2d 1454, 1466 (10th Cir. 1985).

Third, Plaintiff may seek remedy for his concerns through the prisoner grievance system.  *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1237 (10th Cir. 2005); 28 C.F.R. §§ 542-542.19 (BOP Administrative Remedy Program through which prisoner can seek formal review of any aspect of confinement).  Inmates in Plaintiff's position have full

access to remedial mechanisms established by the BOP, including grievances filed through the BOP's Administrative Remedy Program ("ARP").  *See* 28 C.F.R. § 542.10 (explaining ARP as providing "a process through which inmates may seek formal review of an issue which relates to any aspect of their confinement").  This program provides yet another means through which allegedly unconstitutional actions may be brought to the attention of the BOP and prevented from recurring.  This method has the added benefit of limiting judicial interference with prison management while maintaining a method of redress for valid constitutional claims.  *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 566-67 (1974) ("The operation of a correctional institution is at best an extraordinarily difficult undertaking . . . . [T]hey must have the necessary discretion without being subject to unduly crippling constitutional impediments.").

These alternative remedies foreclose the creation of a *Bivens* remedy for either Plaintiff's First or Fifth Amendment claims. "[T]here is no reason to rely on a court-created remedy, like *Bivens*, when Congress has created an adequate means for obtaining legal redress." *Simmat*, 413 F.3d at 1231.

### b.    Special Factors

The Court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy.  *Wilkie*, 551 U.S. at 550. Though neither the Supreme Court nor the Tenth Circuit has offered explicit guidance for interpreting this language, the plain meaning of the language suggests that the threshold for finding special factors is quite low.  Borrowing from the Second Circuit, the only federal court of appeal to speak directly on the meaning of this terminology:

The only relevant threshold—that a factor "counsels hesitation"—is

> remarkably low. It is at the opposite end of the continuum from the unflagging
> duty to exercise jurisdiction.  Hesitation is a pause, not a full stop, or an
> abstention; and to counsel is not to require.  "Hesitation" is "counseled"
> whenever thoughtful discretion would pause even to consider.

*Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009).  In the case at hand, the factors

counseling hesitation are more than sufficient to meet this low threshold.  In the context

of prison management, the Supreme Court recognizes the value of balancing inmates'

interests against the administrative needs of the prison, noting that a degree of flexibility

and accommodation of prison discretion is required.  *See, e.g.*, *Wolff*, 418 U.S. at 566-67

(Correctional institutions "must have the necessary discretion without being subject to

unduly crippling constitutional impediments[.]").  Courts owe substantial deference to

professional judgment of prison administrators, and absent concerns that prison inmates

will be otherwise unable to redress their claims, this Court hesitates to create a new cause

of action that may be brought against prison officials for monetary damages.  *See Beard

v. Banks*, 548 U.S. 521 (2006) (Justice Breyer, with two Justices and the Chief Justice

concurring, two Justices concurring in the judgment); *Overton*, 539 U.S. at 132 (noting that

courts owe "substantial deference to the professional judgment of prison administrators");

*see also Battle*, 564 F.2d at 392 ("We . . . abhor any situation or circumstance requiring

the intervention of the federal courts in matters involving the administration, control and

maintenance by the sovereign states of their penal systems.").

    As discussed previously, prisoners already have a variety of ways to pursue First

and Fifth Amendment claims, and denying *Bivens* claims for money damages will not deny

prisoners effective relief for their claims.  On the other hand, creating a superfluous way

for prisoners to gain relief by suing prison employees individually will interfere with prison

management and add to the Court's already heavy burden of prisoner litigation. These special factors are sufficient to counsel hesitation in creating a new *Bivens* remedy.

A *Bivens* damages remedy "is not an automatic entitlement . . . and in most instances we have found a *Bivens* remedy unjustified." *Wilkie*, 551 U.S. at 550. As both of the above factors weigh against extending *Bivens* to either First or Fifth Amendment claims in the context of federal prisons, the Court agrees with Defendants that here, there is no legal basis to recognize any claim for damages against Defendants in their individual capacities.[6]

While "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice," *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010), the Court concludes that any attempt by Plaintiff to reassert a Bivens action arising out of the First or Fifth Amendment would be futile as a matter of law. *See Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citation omitted); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.") (quotation marks, citation, and alteration omitted). Therefore, the Court **grants** the pending Motions regarding Plaintiff's claims against any Defendant for damages, and **recommends** that Plaintiff's *Biven's* claims for damages be **dismissed with prejudice**.

---

[6]Since qualified immunity applies only to claims for damages, the Court does not address this defense. *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987); *Kikumura v. Hurley*, 242 F.3d 950, 962-63 (10th Cir. 2001).

Because the only monetary claims that could remain without *Bivens* liability are official capacity claims, and the Eleventh Amendment bars monetary recovery for such claims, no monetary damages claims remain against any Defendant, whether they be stated as requests for nominal, compensatory or punitive damages.  *See generally Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007); *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993).

Further, as set forth above, the Court concludes that Plaintiff's Amended Complaint [#46] does not adequately state any claim for relief against Defendant Shepherd, whether for monetary, declaratory, or injunctive relief.  As this disposes of all claims for relief against Defendant Shepherd, the Court **recommends** that Defendant Shepherd's Motion to Dismiss [#52] be **granted**.  Only claims for injunctive relief against Defendants Rangel and Foster, in their official and individual capacities, and injunctive relief against the BOP remain.

### 2.     Claim One: First Amendment Retaliation Claims

Plaintiff asserts that Defendants Rangel and Foster engaged in a series of retaliatory actions that would chill a person of ordinary firmness from exercising certain First Amendment rights.  *Am. Compl* [#46] at 9.  Plaintiff contends that these Defendants "have engaged in a continuous pattern of retaliatory and malicious actions . . . in an attempt to punish Plaintiff for his exercise of particular constitutional rights[.]"  *Id.* at 8-9. Plaintiff's only remaining request for relief regarding this claim is a request for an injunction ordering that:

> Defendants Rangel [and] Foster . . . and any BOP official or employee in concert or collusion with any one of them, *immediately and permanently*

> *refrain from retaliating against Plaintiff* . . . for filing this lawsuit, for filing grievances, for seeking access to the Courts, and for associating or speaking freely on matters pertaining to the advancement of civil and constitutional rights.

*Am. Compl.* [#46] at 83-4 (emphasis added).  In response to Plaintiff's claims for relief, Defendants argue pursuant to Fed. R. Civ. P. 12(b)(6) that Plaintiff has not alleged facts sufficient to show either that Defendants' actions caused Plaintiff to suffer an "injury that would chill a person of ordinary firmness from continuing to engage in the activity" or that Defendants's actions were substantially motivated as a response to any protected activity. *BOP's Motion* [#55] at 1; *Foster's Motion* [#56] at 2; *see Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009).

    To state a claim upon which relief can be granted for First Amendment retaliation, Plaintiff must plead facts indicating that he can plausibly prove three elements at trial: (1) that Plaintiff was engaged in constitutionally protected activity; (2) Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that Defendants' adverse actions were substantially motivated by Plaintiff's exercise of constitutionally protected conduct. *Shero*, 510 F.3d at 1203.  In this context, the Supreme Court has defined "injury" to include hindrances in a prisoner plaintiff's efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  To prevail on the causation element of a claim for retaliation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)).  That is, "it is imperative that [P]laintiff's pleading be factual and not conclusory.  Mere allegations of constitutional

retaliation will not suffice; [P]laintiff[ ] must, rather, allege specific facts showing retaliation because of the exercise of . . . constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *accord Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Rule 65(d) mandates that every injunction order "state its terms specifically" and "describe in reasonable detail" the "act or acts restrained or required." Fed. R. Civ. P. 65(d). Claimants may not avoid this rule by requesting an injunction that operates at some "stratospheric level of abstraction." *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). A claim for injunctive relief must also be based on some underlying constitutional violation or threat of constitutional violation. *See, e.g.*, *Rizzo*, 423 U.S. at 377 (injunction could only issue if constitutional violation was shown). Injunctive relief is only appropriate "to prevent existing or presently threatened injuries [and] will not be granted against something merely feared as liable to occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). Likewise, injunctive relief cannot be conditioned on a past injury that has already been remedied. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n.6 (10th Cir. 2005) (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunctive relief . . . it is insufficient for them to demonstrate only a past injury[.]")).

**1.     Specificity Requirements of Fed. R. Civ. P. 65(d).**

The Court finds that Plaintiff's requested relief is indefinite, vague, and fails to comply with Fed. R. Civ. P. 65(d). The rule requires that an injunction be reasonably specific in identifying what acts are prohibited or required, both to give notice to the

defendant of what is prohibited, and to guide an appellate court in reviewing the defendant's compliance or noncompliance with the injunction. *Schmidt v. Lessard*, 414 U.S. 473, 476-77 (1974). An injunction simply requiring the defendant to obey the law is too vague to satisfy the specificity requirements of Fed. R. Civ. P. 65(d). *Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009); *Shook*, 543 F.3d at 604; *Keyes v. Sch. Dist. No. 1*, 895 F.2d 659, 668 (10th Cir. 1990); *accord S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) ("Under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.") (citation omitted); *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 898 (5th Cir. 1978); *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) (stating that the rule against broad, vague injunctions "is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed[, and to be sure] that the appellate court knows precisely what it is reviewing"); *cf. Clay v. Pelle*, 10-01840, 2011 WL 843920, at *5 (D. Colo. March 08, 2011) ("Here . . . Plaintiffs seek to permanently enjoin the defendants from continuing to enforce the challenged postcard-only policy[.] Plaintiffs therefore seek to enjoin a *specific policy* currently being enforced by the Defendants.") (emphasis added).

Rule 65(d) mandates that every injunction order describe in reasonable detail the actions to be restrained or compelled, and Plaintiff may not circumvent this rule by requesting an injunction that operates at some "stratospheric level of abstraction." *Shook*, 543 F.3d at 604; Fed. R. Civ. P. 65(d). Here, Plaintiff seeks an order barring Defendants Rangel and Foster, and other unnamed cohorts, from retaliating against him, but fails to specify the conduct to be prohibited. Arguably any negative action directed toward Plaintiff which he perceives as motivated by a desire to punish could fall within the broad

parameters of the order he seeks.  He has simply failed to describe "the actions to be restrained."  Thus, Plaintiff's requested relief does not meet this requirement.

### 2.    Requirement to State a Constitutional Violation

Even assuming that Plaintiff had stated a claim for relief meeting the requirements of Rule 65(d), Plaintiff must plead facts indicating that he can plausibly prove that (1) he was engaged in constitutionally protected activity, (2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse actions were substantially motivated as a response to his exercise of constitutionally protected conduct.  *Shero*, 510 F.3d at 1203. Plaintiff must then show that an injunction is necessary "to prevent existing or presently threatened injuries[.]"  *Connecticut*, 282 U.S. at 674.

To the extent Plaintiff bases his claims for injunctive relief on his filing of a grievance for another prisoner, his allegations fail to satisfy the first element of a First Amendment claim.  *Nielander*, 582 F.3d at 1165.  The Tenth Circuit "has made clear that an inmate 'does not have a protected interest in providing legal representation to other inmates.'"  *Peterson*, 149 F.3d at 1144 (quoting *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990)).  Plaintiff seems to concede this point in his Responses to Rangel's and Foster's Motions, arguing that his claim is not based on his filing of a grievance for a third party, but upon his own grievance filings and his right of "association" with fellow inmates. *See Response* [#66] at 4-10;  *Response* [#67] at 4.  However Plaintiff attempts to spin this argument, the facts pled in Plaintiff's Amended Complaint indicate that this "association" took the form of legal assistance.  *Am. Compl.* [#46] ¶ 36.  Even if the alleged retaliation arose from Plaintiff's association, the Court declines to find that a retaliation claim is viable

when the underlying activity is an inmate's legal assistance to other inmates.  *See Baughman v. Saffle*, No. 11-6296, 2001 WL 1241329, at *3 (10th Cir. Oct. 17, 2001).

Regarding the second element, the requirement of a 'chilling' injury, the Court notes that the only injuries Plaintiff claims against Defendant Rangel—loss of privileges, housing transfers, and potential ostracization—were proximately caused by his own refusal to move to the PC range.  *Am. Compl.* [#46] ¶ 36.  The Court also notes that the potential ostracization Plaintiff claims to have been trying to avoid by refusing to move to the PC range would not have been caused solely by Defendant Rangel, but primarily by Plaintiff's fellow inmates.  *Id.* at ¶¶ 35, 38.  Plaintiff also fails to allege that Defendant Rangel had any involvement in the transfer other than a "significant part in having . . . charges referred to herself as UDC Chairperson."  *Am. Compl.* [#46] ¶ 41.  Plaintiff acknowledges that Defendant Rangel was only  involved with the start of the process that led to his sanction.  *Id.* ¶¶ 42, 43.  According to Plaintiff's own pleadings, Defendant Rangel did not have the authority in her role to impose any sanction.  *Id.*

As to Defendant Foster, Plaintiff argues that comments allegedly made by Defendant Foster caused resentment towards him by other inmates.  *Am. Compl.* [#46] ¶ 18.  "Verbal harassment, threats, or taunts do not rise to the level of a First Amendment . . . violation."  *Teague v. Hood*, No. 06-1800, 2008 WL 2228905, at *10 (D. Colo. May 27, 2008) (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)).  The threat of a search does not constitute an injury for the purpose of finding First Amendment retaliation.  *See id.*  Likewise, there is no evidence that the search which was later conducted constituted an injury, and Plaintiff makes only conclusory claims that but for a desire to retaliate, the search of his and the other inmates' cells would not have taken

place. *Am. Compl.* [#46] ¶ 20. Additionally, any role Defendant Foster may or may not have played in Plaintiff's transfer to SHU after his refusal to move to the PC range would also fail to demonstrate an injury, since there is no constitutional right for a federal prisoner to be housed in a particular portion or unit of a correctional institution. *See*, *e.g.*, *Meachum*, 427 U.S. at 225 (no liberty interest in confinement in particular institution in prison system).

Concerning the third element, the requirement that the actions be motivated by constitutionally protected activity, Plaintiff alleges that when he asked another guard why he was moving to the PC range, the guard told Plaintiff that Defendant Rangel was moving Plaintiff because he filed a grievance for another inmate. *Am. Compl.* [#46] ¶ 32. As previously noted, this allegation, even taken as true, would not meet the first element of a First Amendment retaliation claim because it is expressly based on unprotected activity. *Peterson*, 149 F.3d at 1144. Plaintiff goes on to claim that this statement was evidence of Defendant Rangel's "motive and intent to punish and retaliate against Plaintiff for filing grievances in general[,]" but offers no further evidence of Defendant Rangel's alleged malice against Plaintiff for constitutionally protected activity. *Am. Compl.* [#46] ¶ 33. Plaintiff's claim that Defendant Rangel's acts were based on protected activity is supported only by Plaintiff's conclusory allegations. *Iqbal*, 556 U.S. at 675 (court does not consider conclusory factual allegations); *see also Frazier,* 922 F.2d at 562 n.1 ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

Plaintiff's allegations of Defendant Foster's motivations are also entirely conclusory. Plaintiff claims that Defendant Foster allegedly made a statement—"C.O.s were suppose

to do cell searches"—and that cell searches were conducted some thirty minutes later. *Am. Compl.* [#46] ¶¶ 18-19.  Plaintiff argues that the temporal proximity between the alleged protected activity (a request for a grievance form) and Defendant Foster's challenged actions is relevant to plausibility, but mere temporal proximity of protected activity and challenged actions is not sufficient to allege but-for causation.  *See, e.g.*, *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 746 (10th Cir. 1999) ("The mere temporal proximity of Plaintiff's protected speech to his termination is insufficient, without more, to establish retaliatory motive.").

Plaintiff also fails to allege that Defendants' actions would chill a person of ordinary firmness from engaging in protected activity, or even that they chilled protected activity of his own.  *Nielander*, 582 F.3d at 1165.  With regards to his fears of inmate ostracization, Plaintiff fails to make plausible allegations as to how, in a maximum security prison, other inmates' feelings towards Plaintiff would chill his exercise of his own speech and complaints.  The Court notes that Plaintiff was repeatedly and successfully able to pursue administrative remedies under the BOP's grievance procedures.[7]  As Plaintiff was also able to file this lawsuit, it is clear that whatever ostracization or bitterness he may have experienced at the hands of his fellow inmates had no effect on his "firmness" in engaging in such activities.  Accordingly, these allegations fail to state either a current or threatened

_____

[7] Plaintiff's amended complaint attaches a copy of eight written informal requests for administrative remedies.  *Informal Resolution Forms* [#46-1, -2, -6, -7, -8, -13, -14, -15].  It is also obvious from these exhibits that whatever ill will Plaintiff's fellow inmates may express towards him, these feelings have not prevented Plaintiff from filing formal Requests for Administrative Remedies. *BP-9 Requests For Administrative Remedies* [#46-4, 9, 10, 11, 17].  Plaintiff has even been able to file a successful appeal through the APR of sanctions imposed by a DHO.  *See Administrative Remedy No. 622986-A1* [#46-3].

constitutional violation, and Plaintiff is not entitled to injunctive relief for these claims.

For these reasons, Plaintiff fails to state a claim against Defendant Rangel for a constitutional violation, and is thus not entitled to an injunction against Defendant Rangel. Plaintiff also fails to state a claim against Defendant Foster for a constitutional violation requiring injunctive relief. Therefore, the Court respectfully **recommends** that Plaintiff's First Amendment claims for injunctive relief against Defendants Rangel and Foster be **dismissed without prejudice**. *See Gee*, 627 F.3d at 1186. As this is the only remaining claim for relief against Defendant Foster, the Court respectfully **recommends** that Defendant Foster's Motion [#56] be **granted**.

### 3.    Claim Two: Fifth Amendment Claim Against Defendant Rangel

Plaintiff argues that Defendant Rangel's refusal to recuse herself from Plaintiff's UDC hearing was a Fifth Amendment violation. *Am. Compl.* [#46] ¶ 83.[8]  "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000). "A person alleging that he has been deprived of his right to procedural due process must prove two elements: that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that he was not afforded an appropriate level of process." *Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d 1086, 1093 (10th Cir. 2007) (internal quotations omitted); *see Ky. Dept. of Corr. v.*

---

[8]  The Court notes that Plaintiff also requests a declaratory judgment that his Substantive Due Process rights were violated by the actions of all of the individual Defendants. *Am. Compl.* [#46] at 81-2. However, Plaintiff never articulates the claim behind this claim for relief, nor does he provide facts that would support such a claim for relief. Additionally, as discussed above, the Court lacks subject matter jurisdiction to grant this relief. Therefore, the Court does not address these claims.

*Thompson*, 490 U.S. 454, 460 (1989) (setting forth elements of procedural due process violation).

"[L]awfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), *overruled in part on other grounds by Sandin*, 515 U.S. 472.   For federal prisoners, a liberty or property right exists only where interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Plaintiff alleges that the atypical and significant hardship resulting from Defendant Rangel's actions was "continual sleep deprivation due to incessant day and night screaming and banging" by other SHU inmates. *Am. Compl.* [#46] ¶ 84.  The Court notes, however, that Plaintiff had no liberty interest in avoiding being housed in the SHU.  *See, e.g.*, *Hewitt*, 459 U.S. at 468 ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and does not involve an interest independently protected by the Due Process Clause.).  "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin*, 515 U.S. at 480 (quoting *Hewitt*, 459 U.S. at 468).   Additionally, Plaintiff fails to allege how the conditions in the SHU were different from conditions he previously faced or prison conditions in general.   Therefore, Plaintiff has not shown how those conditions were atypical.

The only process due to inmates with respect to disciplinary proceedings is that required by *Wolff v. McDonnell.*   418 U.S. 539, 556 (1974).   An inmate must be given written notice of the charges against him prior to the disciplinary hearing, an opportunity to call witnesses and present documentary evidence (if appropriate considering safety and

correctional goals), and a written statement or reasoning by the fact finders. *Id.*; *see Pinson v. Davis*, No. 11-01333, 2012 WL 1429384, at *1-2 (D. Colo. April 25, 2012) (summarizing *Wolff's* requirements). Further, the decision must be based on some evidence. *Id.* Here, Plaintiff fails to allege that Defendant Rangel had any involvement in the discipline process other than "a significant part in having the charges referred to herself as UDC Chairperson." *Am. Compl.* [#46] ¶ 41. Plaintiff acknowledges that Defendant Rangel was involved with the beginning of the process that led to his sanction, but she did not have the power in that limited role to make a finding of guilt or impose a sanction. *Id.* ¶¶ 42-43. The Court cannot from these facts infer that Plaintiff "was not afforded an appropriate level of process." *Zwygart*, 483 F.3d at 1093.

In addition, Plaintiff did not respond to any of these arguments in his Response, and addresses his Fifth Amendment claim only to note that Defendant Rangel's involvement in the disciplinary process should bolster his First Amendment retaliation claim, not to argue an independent violation of his procedural due process rights. *Response* [#67] at 15-17. Despite the application of a relaxed pleading standard, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson*, 17 F.3d at 1277. Thus, by failing to counter Defendant Rangel's arguments in the BOP's Motion, Plaintiff concedes that his second claim should be dismissed for the reasons demonstrated in the BOP's Motion. *BOP's Motion* [#55] at 14-17. As such, the Court respectfully **recommends** that Plaintiff's Claim Two against Defendant Rangel be **dismissed**. This disposes of all claims for relief against Defendant Rangel, and the Court therefore respectfully **recommends** that Defendant Rangel be **dismissed** as a defendant in this case.

**4.     Claim Three: Violation of *Accardi* Doctrine**

Finally, Plaintiff seeks injunctive relief against the BOP for failing to abide by its own rules and regulations pursuant to 28 C.F.R. § 542.13(a), alleging that the BOP has violated a duty to "properly implement" its grievance procedures by engaging in "a policy of deliberately frustrating, delaying and denying attempts by inmates to pursue their Administrative Remedies." *Am. Compl.* [#46] at 10-11, ¶ 86. Plaintiff alleges that this violates the doctrine established in *Accardi* that administrative bodies are bound by their own regulations. 347 U.S. at 265. Plaintiff argues that: (1) only prejudice, and not the implication of a due process interest, is necessary to apply *Accardi*, and (2) the BOP failed to comply with its regulation because requiring an oral complaint "clearly limits" Plaintiff's access to the remedy program. *Response* [#81] at 2-5.

In *Accardi*, the Attorney General circulated to all employees in the immigration service a list of individuals whom he wished to deport, including the petitioner. 347 U.S. at 266-68. The Supreme Court concluded that, assuming the truth of the allegations that the Board of Immigration Appeals ("BIA") based its decision on the Attorney General's list, the BIA ignored regulations requiring it to exercise its own discretion, thereby violating the petitioner's due process rights. *Id.* at 266-68. Other agency decisions have been reversed by the Supreme Court due to failure to follow the established procedures of the agency. *See Serv. v. Dulles*, 354 U.S. 363 (1957) (dismissal of State Department employee); *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (dismissal of employee by Secretary of Interior); *Yellin v. United States*, 374 U.S. 109 (1963) (criminal contempt initiated by Congressional committee); *Morton v. Ruiz*, 415 U.S. 199 (1974) (Bureau of Indian Affairs denial of general assistance benefits). These cases seem to be premised on "the fair play concept

-39-

embodied in the principle that due process of law is required for governmental actions that affect the rights of individuals." *Nichols v. Reno*, 931 F. Supp. 748, 751 (D. Colo. 1996). In the Supreme Court cases cited above, "the agency regulations both created the interest to be protected and defined the process due to protect it." *Id.* In an unpublished decision, the Tenth Circuit asserted that "*Accardi* stands for the proposition that an agency must adhere to its own rules and regulations when an individual's due process interests are implicated." *Barrie v. Fed. Aviation Admin.*, No. 00-9500, 2001 WL 901147, at *3 (10th Cir. Aug. 10, 2001). Because this interpretation of *Accardi* is consistent with the case law from the Supreme Court, and because Plaintiff fails to offer case law citing his proposed alternative rule requiring only prejudice and not implication of a due process interest, the Court finds that *Accardi* applies only when an individual's due process interests are implicated by the agency regulations.

To determine whether a due process interest has been implicated by the regulations at issue, the Court analyzes whether the regulation at issue created an interest to be protected and defined the process due to protect it. *See Nichols*, 931 F. Supp at 751. In doing so, the Court follows the guidance of the Supreme Court decision in *Sandin*. 515 U.S. at 481. The Supreme Court noted in *Sandin* that "[b]y shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the [*Hewitt*] Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* The Court noted that *Hewitt* had produced at least two undesirable effects.

> First, [*Hewitt*] creates disincentives for States to codify prison management procedures in the interest of uniform treatment. Prison administrators need be concerned with the safety of the staff and inmate population. Ensuring

that welfare often leads prison administrators to curb the discretion of staff on the front line who daily encounter prisoners hostile to the authoritarian structure of the prison environment. Such guidelines are not set forth solely to benefit the prisoner. They also aspire to instruct subordinate employees how to exercise discretion vested by the State in the warden, and to confine the authority of prison personnel in order to avoid widely different treatment of similar incidents . . . . Second, the *Hewitt* approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone. In so doing, it has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.

*Id.* at 482-83 (citations omitted). The *Sandin* Court thus abandoned the text-based methodology of *Hewitt* and returned to the due process principles established and applied in *Wolff* and *Meachum*, recognizing that regulations may grant prison inmates liberty interests that are protected by the Due Process Clause, but that "these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483; *see also Bd. of Pardons v. Allen*, 482 U.S. 369 (1987).

The regulation at issue provides:

(a) Informal resolution. Except as provided in § 542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. *Each Warden shall establish procedures to allow for the informal resolution of inmate complaints*.

28 C.F.R. § 542.13(a) (emphasis added).[9] Plaintiff requests injunctive relief against the

---

[9] The Court notes that this regulation provides some exceptions: Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals. *Id.* Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution." *Id.*

BOP, stating in part:

> The Administrative Remedy Program of the BOP, as regulated and defined in the Code of Federal Regulations, requires only a four-step process . . . *which includes the written submission of grievances on a BP-8*, BP-9, BP-10 and BP-11 form[, and] *BP-8 Informal Resolution Forms should be supplied liberally upon request*[.]

*Am. Compl.* [#46] at 82-83 (emphasis added).  Plaintiff also requests injunctive relief ordering the BOP and its agents to "cease and desist from engaging in its [sic] current policy and practice of refusing to supply the Plaintiff with a BP-8 Informal Resolution Form until he first screams out the substance of his complaints . . . and ordering instead that Plaintiff be supplied with such Forms without first having to give any reason at all[.]"  *Id.* at 84-85.  The Court notes, however, that the regulation at issue does not specify how an inmate must present an issue of concern informally to staff, nor does it require the BOP to use a particular type of informal resolution.  28 C.F.R. § 542.13(a).  Moreover, the regulation does not seem to require or prohibit the BOP from requesting oral complaints, written components, or any combination thereof in this informal process.  *Id.*[10]

As noted in *Sandin*, and as the Tenth Circuit has agreed, there are extensive policy reasons for the Courts to allow prison administrators wide discretion in the management of federal prisons.  *See Sandin*, 515 U.S. at 482-83; *Overton*, 539 U.S. at 132; *Meachum*,

---

[10]  The Court also notes that Plaintiff's amended complaint does not allege that the BOP's alleged practice ever impaired his ability to file a formal request for an administrative remedy, so even if the Court were to adopt Plaintiff's interpretation of *Accardi*, Plaintiff would have failed to show prejudice.  As previously noted, Plaintiff's amended complaint attaches a copy of eight written informal requests for administrative remedies.  *Informal Resolution Forms* [#46-1, -2, -6, -7, -8, -13, -14, -15].  It is also obvious from these exhibits that whatever policies are in place in Florence ADX have not prevented Plaintiff from access to BP-9 Forms or from filing formal Requests for Administrative Remedies.  *BP-9 Requests For Administrative Remedies* [#46-4, -9, -10, -11, -17]. Plaintiff has even successfully appealed sanctions under this system.  *See Administrative Remedy No. 622986-A1* [#46-3].

427 U.S. 215; *Citizens Concerned for Separation of Church & State*, 628 F.2d at 1299; *see also Battle*, 564 F.2d at 392 ("We . . . abhor any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems."). Given the policy concerns discouraging an assumption that a federal prison regulation has created a due process interest or that said interest has been violated without a showing of atypical and significant hardship, combined with Plaintiff's failure to identify a due process interest at stake here, the Court finds that Plaintiff has failed state a claim for which relief can be granted for a due process violation under *Accardi*, and Plaintiff is not entitled to injunctive relief. As this disposes of all of Plaintiff's claims for relief against the BOP and all claims stated in the Motion filed on behalf of the BOP and Rangel [#55], the Court respectfully **recommends** that Plaintiff's Claim Three be **dismissed without prejudice**, *Gee*, 627 F.3d at 1186, and that the BOP's Motion [#55] be **granted in part and denied in part as moot.**

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Shepherd's Motion [#52] and Foster's Motion [#56] be **GRANTED**, that the BOP's Motion [#55] be **GRANTED in part and DENIED as moot in part**, and that Plaintiff's Amended Complaint be **DISMISSED** in part with prejudice and in part without prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 25, 2013                    BY THE COURT:

Kristen L. Mix
United States Magistrate Judge